IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

JUSTIN TODD, by and through   )
his mother and next friend,   )
SHIRLEY TODD,                 )
                              )
          Plaintiff,          )
                              )
vs.                           )    Case No. CV 02-TMP-893-NW
                              )
BELLSOUTH TELECOMMUNICATIONS, )
INC.,                         )
                              )
          Defendant.          )

**ENTERED**

FEB 19 2004

**MEMORANDUM OPINION**

This action is before the court on the motion for summary
judgment filed on July 15, 2003, by defendant BellSouth
Telecommunications, Inc., ("BellSouth"). The matter has been fully
briefed, and the parties have consented to the jurisdiction of the
undersigned magistrate judge pursuant to 28 U.S.C. § 636(c);
accordingly, the court enters this memorandum opinion.

**I.   SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment
is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment

as a matter of law."   Fed. R. Civ. P. 56(c).   The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.   Celotex, 477 U.S. at 322-23.   There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."   Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Id. at 324 (quoting Fed. R. Civ. P. 56(e)).   When the nonmoving party does not respond, "summary judgment, if appropriate, shall be entered against the adverse party."   Fed. R. Civ. P. 56(e).

2

The nonmoving party may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has had the opportunity to respond to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).

## II. UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmoving party, as this court must for purposes of summary judgment, the facts pertinent to defendant's motion for summary judgment appear to be as follows.

The plaintiff, Justin Todd, was visiting a friend, Dennis Bircheat, who lived near Spring Park in Tuscumbia, Alabama, on June 23, 2001. Spring Park was the location of the annual Helen Keller Festival, which was taking place on that day. Todd was 13 years old at the time. Bircheat owned a dirt bike, which Todd had ridden on past occasions. Bircheat's father gave Todd permission to ride the bike on the evening of June 23. Todd took the dirt bike to a lot adjacent to Spring Park where he had ridden before. The lot was being used to park cars for the festival, however, and the uniformed parking attendants[1] instructed Todd to ride in a similar grassy lot adjacent to the area being used for parking. Todd asked

---

[1]      Although plaintiff's counsel argues that the parking attendants were uniformed police officers of the City of Tuscumbia, Todd was not clear on that fact in deposition, and merely noted that the attendants wore uniforms.

4

Bircheat's father if he could ride in the area indicated by the parking attendants, and Bircheat's father gave him permission. Bircheat's father continued to watch Todd from a nearby hillside as Todd rode in the area to which he had been directed.  Todd rode the bike into an unguarded guy wire[2] that was connected to a BellSouth telephone pole located on the land.  The impact with the guy wire caused serious injury to Todd's torso.

The pole holding the guy wire that injured Todd is designated by BellSouth as pole 1822.  The other telephone poles located in the lot have guards or markers on the guy wires, but pole 1822 did not.  BellSouth has no records to indicate whether a guy wire guard had  ever been placed on pole 1822.  BellSouth regulations require that guy wire guards be used "in parking areas, playgrounds, along sidewalks, and grounds around residential buildings."  The same regulation does not require a guy wire guard or marker in "swamps, marsh lands, forests, fields, pastures, hedge rows or next to a fence."

The area in which Todd was injured was owned by the City of Tuscumbia.  Signs are posted near the road that leads to the lot which prohibit vehicles on the grass.  Bircheat's home, and other

---

[2]      A guy wire is a supporting wire that is anchored in the ground on one end, and to the utility pole on the other end, and extends from the pole at an angle.  A guy wire guard, also known as a marker, is a piece of plastic, usually brightly colored, that is placed over the guy wire near eye level in order to make the guy wire visible to pedestrians or drivers.

residences, were located directly across the street from the lot. The lot is bounded by Spring Park, a city park and picnic area, Spring Creek, West Ninth Street and South Hook Street.

### III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant seeks summary judgment on the following grounds: (1) BellSouth is not liable for plaintiff's injuries because BellSouth's duty to Todd, a licensee, was only to avoid wantonly or intentionally injuring him; (2) BellSouth is not liable for the plaintiff's injuries because Todd was accompanied by an adult, and therefore the heightened standard of care for children set forth in Restatement of Torts § 339 does not apply; and (3) BellSouth is not liable for the plaintiff's injuries because it is shielded by Alabama's Limitation of Liability for Non-Commercial Public Recreational Use of Land set forth at Alabama Code § 35-15-20, *et seq.*

Plaintiff alleges that BellSouth was negligent in failing to attach a guy wire guard or marker to the guy wire. Plaintiff further argues that the premises liability doctrines upon which BellSouth relies do not apply to BellSouth because BellSouth is not the landowner, and that the Recreational Use statute also does not

apply because BellSouth does not own the land where the injury occured.

It is undisputed that the owner of the grassy area where Todd was injured was then, and is now, owned by the City of Tuscumbia. The City of Tuscumbia is not a defendant in this case.  Although logic dictates that BellSouth had some interest in the land, probably an easement, there is no evidence in the record that demonstrates BellSouth's interest in the realty.  BellSouth has failed to cite any case in which the owner of a utility pole was entitled to the protections afforded landowners pursuant to the premises liability doctrine in Alabama, or to Restatement § 339, and the court finds none.  Moreover, the Recreational Use statute cited by BellSouth specifically protects "noncommercial public recreational landowners," and therefore does not protect BellSouth, which is not the owner of the land.[3]  The court further notes that the statute applies only to land that is opened to the public for recreational use.  BellSouth takes the contrary position that the land was a field that was not exposed to pedestrian or vehicular traffic, which does not support its position that it is entitled to the protection of § 35-15-20 *et seq.*

---

[3]     Even if the statute did apply to BellSouth, the exceptions set forth in Alabama Code § 35-15-24(a) likely would defeat the immunity that would otherwise be awarded a defendant. See, e.g., City of Geneva v. Yarbrough, 70 So. 2d 623, 624-25 (Ala. 1996).

Having determined, then, that BellSouth's liability is not governed by Alabama's premises liability doctrine or the Recreational Use statute, the court must look to Alabama law governing negligence and wantonness in determining whether BellSouth is entitled to summary judgment on plaintiff's claims that BellSouth negligently and/or wantonly failed to provide the guy wire guard on the guy wire that cause plaintiff's injuries.

### A.  Negligence

Under Alabama law, a plaintiff asserting a claim of negligence must prove the existence of a legal duty by the defendant, a breach of that duty, proximate cause, and a resulting injury. See Franks v. Bolden, 774 F.2d 1552, 1555 (11th Cir. 1985). Foreseeability has been said to be the "touchstone" of liability for negligence. Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1416 (M.D. Ala. 1998).  In other words, a duty arises where it is foreseeable that harm may result if due care is not exercised. See, e.g., Lance, Inc. v. Ramanauskas, 731 So. 2d 1204, 1208 (Ala. 1999).

In this case, the court need not delve far into the facts to determine that it was foreseeable to BellSouth that a person riding a dirt bike could be injured by coming into contact with a guy wire.  Clearly BellSouth had a duty to maintain its poles

and guy-wires in such a mannaer as to make them reasonably safe. See, e.g., Alabama Power Co. v. Turner, 575 So. 2d 551 (Ala. 1991)(Wrongful death action existed for person electrocuted when he came into contact with an energized guy-wire); Atlantic Coast Line R. Co. v. Carroll, 208 Ala. 361, 94 So. 820 (Ala. 1922)(same); Western Union Telegraph Co. v. Jones, 190 Ala. 70, 66 So. 691 (Ala. 1914)(same). BellSouth's internal policies called for the placement of guy wire guards on all guy wires that were exposed to residential areas, pedestrian traffic, or vehicular traffic, in order to make the guy wires more readily visible. BellSouth does not, and could not, argue that it did not foresee harm. Rather, BellSouth argues that pole 1822 was located in a field, comparable to a marsh or swamp, and was an area not likely to be exposed to people or vehicles.

BellSouth's assertion raises a fact question that must be decided by a jury. See Cherokee Electric Coop. v. Cochran, 706 So. 2d 1188, 1192 (Ala. 1997)(holding that whether it was reasonably foreseeable that members of the public could come into contact with a live power line was a question for the jury). Although BellSouth argues that the area was a "field," other guy wires in the same field had guy wire guards on them. BellSouth was aware of the field's proximity to residences, and its location adjacent to a public park that was crowded with people and cars every year for the Helen Keller Festival. Accordingly, there exists a fact

9

question as to whether BellSouth was negligent in failing to attach or maintain a guy wire guard to the guy wire on pole 1822.

### B.  Wantonness

To be guilty of wantonness under Alabama law, a defendant must have acted with reckless indifference to the consequences and must have acted with some consciousness or intention.  <u>Richards v. Michelin Tire Corp.</u>, 21 F.3d 1048, 1057 (11th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 902, 513 U.S. 1111, 130 L. Ed. 2d 786 (1995). Wantonness must be based on more than showing simply that a defendant was aware that his failure to act would entail more risk than taking the action.  <u>Salter v. Westra</u>, 904 F.2d 1517, 1526 (11th Cir. 1990).  A finding of wantonness exhists only where the actor is aware that injury will "likely or probably result."  <u>Borden v. CSX Transp., Inc.</u>, 843 F. Supp. 1410, 1423 (M.D. Ala. 1993).

In this case, the plaintiff has failed to demonstrate that BellSouth was aware that pole 1822 did not have a guy wire guard on the guy wire, or that BellSouth knew that the grassy area where pole 1822 was located was used for biking or other recreation. While BellSouth knew that placing guy wire guards created a safer condition than leaving them off, that knowledge alone does not lead to a finding that the conduct was wanton.  Accordingly, BellSouth cannot be said to have known that injury was likely to result from

the lack of a guy wire guard on the pole in question. Consequently, the motion for summary judgment as to the wantonness claim is due to be granted.

## IV.   CONCLUSION

Consistent with the foregoing discussion of the evidence presented by defendants in support of the motion for summary judgment and plaintiff's submission in opposition, this court determines that defendant's motion for summary judgment (court document # 13) is due to be GRANTED IN PART and DENIED IN PART and plaintiff's claim of wanton conduct is due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED the 19th day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

11